```
                    UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ROBERT DRUMMOND,                    :    CIVIL NO. 3:09-CV-1258
                                    :
            Petitioner              :    (Judge Munley)
     v.                             :
                                    :    (Magistrate Judge Smyser)
JERRY C. MARTINEZ, WARDEN           :
LSCI ALLENWOOD,                     :
                                    :
            Respondent              :
```

**REPORT AND RECOMMENDATION**

On July 1, 2009, the petitioner, a federal prisoner proceeding *pro se,* filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The petitioner claims that the Bureau of Prisons (BOP) has misinterpreted 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c), as amended by the Second Chance Act of 2007. More specifically, the petitioner claims that the BOP evaluated him for placement in a residential re-entry center (RRC) pursuant to an April 14, 2008 memorandum that is inconsistent with the Second Chance Act.

On July 31, 2009, the respondent filed a response to the petition, and on August 17, 2009, the petitioner filed a reply.

The petitioner was convicted in the United States District Court for the Western District of North Carolina. *See Doc. 7-2,*

*Decl. of Bruce Beaver at ¶2.* The petitioner was sentenced to a 132-month term of imprisonment. *Id.* The petitioner's projected release date, via Good Conduct Time release, is July 5, 2010. *Id.*

In October of 2008, the petitioner was informed that he would be recommended for a 150-180 day RRC placement. *Id.* at ¶7. On June 23, 2009, the petitioner was approved for a 180-day placement in an RRC. *Id.* at ¶8. The petitioner contends that he was not considered for twelve months in pre-release custody as required by the Second Chance Act and he is seeking an order invalidating the BOP's denial of twelve months pre-release custody time and an order compelling the BOP to reconsider him in good faith for pre-release custody placement in either a RRC or home confinement for the last twelve months of his sentence.

18 U.S.C. § 3621(b) concerns the place of imprisonment of a federal prisoner and provides that in designating the place of a prisoner's imprisonment the BOP shall consider the following factors: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence - (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as

2

appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

18 U.S.C. § 3624(c) deals with pre-release custody. Prior to the Second Chance Act (effective April 9, 2008), 18 U.S.C. § 3624(c) provided, in pertinent part, that the BOP "shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."

Prior to December of 2002, the BOP took the position that it had discretionary authority to place an inmate in a Community Corrections Center (CCC)[1] for more than the last ten percent of his sentence. *See BOP Program Statement* 7310.04 at page 4 (Dec. 16, 1998) (stating that a CCC meets the definition of a "penal or correctional facility" and, therefore, the BOP "is not restricted by § 3624(c) in designating a CCC for an inmate and may place an inmate in a CCC for more than the 'last 10 per centum of the term,' or more than six month, if appropriate."). That position

---

[1] The term "residential re-entry center" (RRC) is the term currently used by the BOP for what was formerly termed a CCC.

3

was based on 18 U.S.C. § 3621(b).  The BOP's position changed, however, in the wake of a December 13, 2002 Memorandum Opinion issued by the Department of Justice's Office of Legal Counsel to the United States Deputy Attorney General (OLC Opinion).  The OLC Opinion stated that there is nothing in section 3621(b) that provides the BOP clear authority to place in community confinement an offender who has been sentenced to a term of imprisonment.  The OLC Opinion further noted that pursuant to 18 U.S.C. § 3624(c) the authority of the BOP to transfer a prisoner to a CCC is clearly limited to a period "not to exceed six months, or the last 10 per centum of the term to be served."  The OLC Opinion concluded that the BOP's practice of placing some inmates in CCCs at the outset of their sentences and transferring other inmates to CCCs during the course of their sentences before the inmates reach the last ten percent of their sentences is not lawful.

Following the OLC Opinion, the BOP enacted regulations that provided that the "Bureau designates inmates to community confinement only as part of the pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community." 28 C.F.R. § 570.20(a).  The regulations also provided that the "Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the

4

last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a). Further, the regulations provided that the Bureau "may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A), or shock incarceration program (18 U.S.C. 4046(c))." 28 C.F.R. § 570.21(b). The regulations provided that they are a "categorical exercise of discretion for designating inmates to community confinement." 28 C.F.R. § 570.20(a).

In *Woodall v. Federal Bureau of Prisons,* 432 F.3d 235, 244 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that the BOP's regulations regarding placement in community confinement were invalid because the regulations do not allow for full consideration of the factors enumerated in 18 U.S.C. § 3621(b). The Third Circuit indicated that the BOP does have discretion to refuse to place an inmate in community confinement but that the exercise of that discretion must be based on the § 3621(b) factors. *Id.* at 249.

The Second Chance Act, effective April 9, 2008, amended 18 U.S.C. § 3624(c). 18 U.S.C. § 3624(c) now provides, in pertinent part:

> (1) In general. The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
> (2) Home confinement authority. The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
>
> . . .
>
> (6) Issuance of regulations. The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007 [enacted April 9, 2008], which shall ensure that placement in a community correctional facility by the Bureau of Prisons is-
>> (A) conducted in a manner consistent with section 3621(b) of this title [18 USCS § 3621(b)];
>> (B) determined on an individual basis; and
>> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

On April 14, 2008, Joyce K. Conley, the Assistant Director of the Correctional Programs Division of the BOP, and Kathleen M. Kenney, Assistant Director/General Counsel of the BOP, issued a "Memorandum for Chief Executive Officers" regarding pre-release

6

residential re-entry center placements following the Second Chance Act. *Doc. 1-2.* The memo *inter alia* summarized the relevant statutory changes made by the Second Chance Act and indicated that the BOP's categorical timeframe limitations in its regulations on pre-release community confinement are no longer applicable and shall not be followed, that certain adjustments are necessary to the provisions in Program Statement 7310.04, that inmates must be reviewed for pre-release RRC placements 17-19 months before their projected release dates, that each inmate's pre-release RRC decision must be analyzed and supported under the factors set forth in 18 U.S.C. § 3621(b) and that staff must approach each inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release RRC placement. *Id.* The memo also includes a section that provides:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

*Id.*

The BOP subsequently issued regulations, effective October 21, 2008, setting forth procedures for designating inmates to pre-release community confinement or home detention. *See* 28 C.F.R.

§§ 570.20 - 570.22. The regulations do not include the requirement in the April 14, 2008 memo for approval from the Regional Director for pre-release RRC placement beyond six months.

As indicated above, the petitioner claims that the BOP evaluated him for placement in a RRC pursuant to the April 14, 2008 memorandum and that that memorandum is inconsistent with the Second Chance Act.

The respondent contends that the petition should be dismissed because the petitioner has not exhausted administrative remedies.

Although there is no statutory exhaustion requirement applicable to habeas petitions brought pursuant to 28 U.S.C. § 2241, the courts have created a rule that prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241. *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). The basic rationale for the exhaustion requirement is that judicial review may be facilitated by the agency's development of a factual record, that judicial time may be conserved if the agency grants the relief sought, and that administrative autonomy requires that an agency be given an

8

opportunity to correct its own errors. *Arias v. United States Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981). However, exhaustion of administrative remedies is not required where administrative procedures are unavailable or incompetent to provide adequate redress or where exhaustion would be futile. *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998)(Roth, J., concurring)(exhaustion is not required when petitioner demonstrates that exhaustion is futile).

The petitioner does not dispute that he has not exhausted administrative remedies. The petitioner contends that exhaustion in this case should be excused for several reasons. First, he contends that he would be prejudiced if he were to be required to exhaust the administrative remedy process because he has less than one year to serve. Exhaustion, however, takes time. The petitioner has not explained why, and there is no basis to conclude that, he could not have used the administrative remedy process before he had less than a year to serve on his sentence. The petitioner was informed in October of 2008 that he would be recommended for a 150-180 day RRC placement. Absent reason to believe that the petitioner could not have used the administrative remedy process at an earlier point so that he would not be prejudiced by the time it takes to exhaust administrative remedies, potential prejudice arising from the time it takes to

9

exhaust the administrative remedy process is not a reason to excuse the exhaustion requirement.

The petitioner also suggests that exhaustion should be excused because he is challenging the validity of the BOP's April 14, 2008 memorandum and not its application. Assuming *arguendo* that the petitioner is challenging merely the validity of the April memorandum[2], that in and of itself is not a reason to excuse exhaustion. It is conceivable that the BOP would reconsider the validity of the April memorandum in the administrative context.

In some cases challenging the BOP's regulations regarding placement in community confinement issued prior to the Second Chance Act, courts excused exhaustion of administrative remedies as futile given that the regulations provided an inflexible rule that the BOP will not release a prisoner to community confinement prior to the prisoner's 10% date. *See e.g. Woodall, supra,* 432

---

[2] If the petitioner truly is challenging the validity of the April memorandum rather than its application, that challenge would appear to be moot since the BOP issued regulations in October of 2008 which do not include any provision requiring approval from the Regional Director for pre-release RRC placement beyond six months - the provision in the April memorandum found objectionable by the petitioner. In his reply, the petitioner mentions a November 14, 2008 guidance memorandum requiring regional director approval for RRC placements more than six months. The petitioner, however, has not provided the court with a copy of that purported memorandum.

F.3d at 239 n.2. However, those regulations have been replaced by new regulations implementing the Second Chance Act.[3] Unlike the prior regulations, the new regulations do not contain inflexible rules. Thus, there is no basis to believe that exhaustion would be futile in this case.

The petitioner cites *Strong v. Schultz*, 599 F.Supp.2d 556 (D.N.J. 2009), in support of his contention that exhaustion should be excused. The petitioner in *Strong* claimed that his RRC placement date was determined in violation of the Second Chance Act. The petitioner in *Strong* had pursued all three steps of the administrative remedy process prior to the date that a final decision was made regarding his placement date. The Court in *Strong* determined that a second round of exhaustion was not required because, given time constraints, dismissal of the petition for failure to exhaust would effectively moot the claim and because the objectives of the exhaustion requirement would not be served by requiring a second round of administrative remedies since the petitioner was challenging the validity of the April 14, 2008 guidance and not its application.

---

[3] The Third Circuit had declared those regulations invalid in *Woodall, supra*. Thus, even before those regulations were replaced by new regulations those regulations were not effective within the confines of the Third Circuit.

11

*Strong* is distinguishable from this case. The petitioner in this case, unlike the petitioner in *Strong,* has not presented his claim through the administrative remedy process. In *Strong* the issue was whether a second round of exhaustion should be required. In the instant case, the issue is whether the petitioner should be required to exhaust administrative remedies in the first instance. Given this difference, we conclude that exhaustion in this case should not be excused on the basis of *Strong.* To the extent that *Strong* can to read to stand for the proposition that exhaustion should be excused because of mere delay caused by the administrative remedy process or the fact that the challenge is to the validity of the April 2008 memorandum rather than its execution, for the reasons stated above we disagree.

We will recommend that the petition be dismissed on the basis that the petitioner has failed to exhaust administrative remedies.[4]

---

[4] In the alternative to contending that the petition should be dismissed for failure to exhaust administrative remedies, the respondent contends that the petition should be denied on the merits. Since we conclude that the petition should be dismissed on the basis that the petitioner has not exhausted administrative remedies, there is no need to consider that contention.

12

We note that in addition to framing his petition as a petition for a writ of habeas corpus the petitioner asserts that he is seeking mandamus relief.

Pursuant to 28 U.S.C. § 1361, district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). The remedy of mandamus is to be invoked only in extraordinary situations. *Stehney v. Perry,* 101 F.3d 925, 934 (3rd Cir. 1996)(quoting *Allied Chem. Corp v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)). In order to insure that the writ will issue only in extraordinary circumstances, the petitioner must have no other adequate means to attain the relief he desires. *Id.* at 934 n.6. *See also Grant v. Hogan*, 505 F.2d 1220, 1225 (3rd Cir. 1974)("It is also well recognized that mandamus will lie only when no alternative and adequate remedy is available).

Mandamus is not proper in this case because the petitioner has an alternate and adequate remedy. After exhausting

13

administrative remedies, the petitioner may proceed with his claim pursuant to 28 U.S.C. § 2241.

Based on the foregoing, it is recommended that the petition be dismissed without prejudice on the basis that the petitioner has failed to exhaust administrative remedies.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: August 21, 2009.